

EXHIBIT A

| | |
|---|---|
| STATE OF MAINE<br>Cumberland, ss. | SUPERIOR COURT<br>Civil Action<br>Docket No. |

POWERPAY, LLC, )
a Maine limited liability company )
                                        )
                                        )
                   Plaintiff )
v.                                    )   **COMPLAINT**
                                        )
SCOTTSDALE INSURANCE COMPANY )
An insurance corporation with offices in )
Columbus, Ohio )
                                        )
                   Defendant )

Now comes PowerPay, LLC ("PowerPay") and states as its Complaint against Scottsdale Insurance Company ("Scottsdale") as follows:

### COMMON FACTS TO ALL COUNTS

1. PowerPay is a Maine limited liability company with offices in Portland, Maine.

2. Scottsdale is an insurance corporation with a home office in Columbus, Ohio.

3. Scottsdale issued to PowerPay a Business and Management Indemnity Policy, Policy Number EKS3038198, that provided, inter alia, indemnity coverage and legal defense coverage for employment claims.

4. During the period of the policy, on July 8, 2011, a charge of employment discrimination within the Scottsdale policy coverage was

       filed against PowerPay by Judson F. Smith ("Smith" and/or "Smith Claim") with the Maine Human Rights Commission ("MHRC").

5. On September 1, 2011, Scottsdale notified PowerPay in writing that it would defend the Smith Claim, but would do so under a reservation of rights; see letter annexed hereto as Exhibit A.

6. While the MHRC proceedings was pending, Smith approached PowerPay and Scottsdale in an effort to settle his charge of discrimination.

7. PowerPay, believing that a settlement was reasonable in view of the risks of litigation, sought to have Scottsdale resolve the Claims of Smith against PowerPay.

8. Scottsdale declined to settle the Smith Claims, but instead continued to assert that the settlement demands of Smith were for matters not within the policy coverage.

9. PowerPay did not agree that the settlement demands of Smith were for matters not within the policy coverage.

10. In order to avoid the risks of litigation, and because Scottsdale declined to resolve the matter because of its position that the Smith Claims were losses not within the policy coverage, PowerPay in good faith entered into settlement discussions with Smith.

11. At all relevant times PowerPay kept Scottsdale informed of the status of the settlement discussions, and requested Scottsdale to resolve the Smith Claims, but Scottsdale declined to respond.

12. Acting in good faith, and believing that the resolution of the Smith Claims was fair and reasonable, on or about November 14, 2012, PowerPay finalized a settlement of the Smith Claims for the sum of $1,466,503.29, and the forgiveness of a $297,571.35 balance due from Smith to PowerPay on a Promissory Note, for a total of $1,764,074.60.

## COUNT I

### (Recovery of Payment of Covered Loss by PowerPay)

13. Plaintiff repeats and realleges paragraphs 1 through 12 as if more fully set forth herein.

14. Under the authority of *Patrons Oxford Insurance Company v. Harris*, 905 A.2d 819 (Me. 2006), if a carrier defends under a reservation of rights, it cannot also assert control over the right to settle the litigation, and the carrier foregoes its right to assert that an insured, acting reasonably and prudently, cannot settle claims against the insured without the carrier's consent.

15. PowerPay asserts that the settlement of the Smith Claims was for a covered loss under the policy and was prudent and reasonable under the circumstances.

16. PowerPay seeks a judgment against Scottsdale for reimbursement of the settlement amount paid of $1,764,074.60, together with the attorneys fees expended by PowerPay in negotiating and concluding the settlement of the Smith Claims.

WHEREFORE, Plaintiff PowerPay respectfully requests that the Court enter judgment in the amount of $1,764,074.60, the attorney's fees expended by PowerPay in negotiating and concluding the settlement of the Smith Claims, the attorney's fees and costs of prosecuting this action, and such other relief as may be proper under the law and circumstances of the case.

## COUNT II

### (Declaratory Judgment for Allocation of Covered vs. Uncovered Claims)

17. Plaintiff repeats and realleges paragraphs 1 through 16 as if more fully set forth herein.

18. Annexed hereto as Exhibit B is a true and accurate copy of Endorsement Number 1 to the Scottsdale Policy.

19. Under the terms of the policy, if a portion of a claim asserted against an insured is partially covered, and partially uncovered, "there shall be a

4

    fair and equitable allocation . . . between [the] covered loss and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained."

20. To the extent that any portion of the settlement paid on the Smith Claims is deemed to be payment for an uncovered versus a covered loss, PowerPay seeks a declaration and determination by this Court of a fair and equitable allocation for the portion that is within the policy coverage,

WHEREFORE PowerPay seeks this Court's determination of the fair and equitable allocation of that portion of the settlement as paid by PowerPay on the Smith Claims that is covered by the Scottsdale policy, that the attorneys fees expended by PowerPay in negotiating and concluding the settlement of the Smith Claims are recoverable from Scottsdale, the attorney's fees and costs of prosecuting this action, and such further relief as this Court may order.

### COUNT III

### (Recovery of Covered Losses Paid by PowerPay

21. Plaintiff repeats and realleges paragraphs 1 through 20 as if more fully set forth herein.

22. To the extent that it is determined by this Court that an allocable portion of the Settlement of the Smith Claims paid by PowerPay is within the coverage of the Scottsdale policy, PowerPay seeks a judgment against Scottsdale for that amount, together with the attorneys fees expended by

5

PowerPay in negotiating and concluding the settlement of the Smith Claims.

WHEREFORE, Plaintiff PowerPay respectfully requests that the Court enter judgment in favor of PowerPay against Scottsdale of the allocable portion of the settlement of the Smith Claims that is deemed by the Court to be covered by the Scottsdale policy, the attorneys fees expended by PowerPay in negotiating and concluding the settlement of the Smith Claims, the attorney's fees and costs of prosecuting this action, and such other and further relief as may be proper under the law and circumstances of the case.

Dated at Portland, Maine this 14th day of February 2013

*/s/ U. Charles Remmel*
U. Charles Remmel, II, Esq., Bar No. 1029
Graydon G. Stevens, Esq., Bar No. 299
Attorney for Plaintiff

KELLY, REMMEL & ZIMMERMAN
53 Exchange Street
Post Office Box 597
Portland, Maine 04112-0597
(207) 775-1020

6




FREEDOM SPECIALTY

7 WORLD TRADE CENTER • 250 GREENWICH STREET • SUITE A 33RD FLOOR • NEW YORK NY 10007
p:212-329-6900  f:212-329-6990  tf:888-800-0147 • www.freedomspecialtyins.com

September 1, 2011

Mr. James Raftice
PowerPay, Inc.
320 Cumberland Avenue
Portland, ME 04101

Re: **Insured:** PowerPay, Inc.
   **Insurer:** Scottsdale Insurance Company
   **Policy No.:** EKS3038198
   **Claim No.:** 1373885
   **Policy Type:** Business and Management Indemnity
   **Claimant(s):** Judson Smith

Dear Mr. Raftice:

Freedom Specialty Insurance on behalf of Scottsdale Insurance Company ("**Insurer**") acknowledges receipt of the Charge of Discrimination and correspondence included therewith and reported to Insurer on August 17, 2011 by Stacey L. Rich-Abbott with Swett & Crawford.

The above referenced Business and Management Indemnity Policy ("Policy") with the **Insurer** provides insurance protection to PowerPay, Inc. ("PowerPay"). Nevertheless, the Policy may not cover all of the allegations in the above referenced matter. Existing law requires us to send this letter, which is known as a "Reservation of Rights" letter. This Reservation of Rights letter is not an attempt on our part to avoid our responsibilities to PowerPay under the Policy, but to apprise PowerPay of our obligations and rights. For the reasons set forth below, the **Insurer** will provide a defense to PowerPay for this matter, subject to the terms and conditions of the Policy and our reservation of rights, as set forth herein.

We appreciate and value PowerPay as a customer. We are committed to working closely with you in the defense of this matter. Should you have any questions or concerns after reading this letter, please feel free to contact me at any time. To assist you in understanding this letter, we suggest that the Policy be reviewed together with this letter. This letter does not modify the terms and conditions of the Policy. Please note that the words that appear in **bold** print are defined in the Policy.

On or about July 8, 2011 Judson Smith ("Claimant") filed a Charge of Discrimination with the Maine Human Rights Commission. The Claimant maintains that he was terminated after reporting that merchant funds were being misappropriated. The Claimant also contends that the

Underwritten by Scottsdale Indemnity Company
A Nationwide® Company

James Raftice
September 1, 2011

termination was wrongful and in retaliation and whistleblower retaliation of the report. The Claimant also alleges that he is owed residual commissions from PowerPay.

The Complaint reviewed under the Policy, specifically the General Terms and Conditions Section ("GTC Section") and the Employment Practices Coverage Section ("EPL Coverage Section"), Policy No. EKS3038198, which has a **Policy Period** effective from May 9, 2011 to May 9, 2012. The EPL Coverage Section provides limits of liability of $3,000,000, an additional aggregate of $1,000,000 for all **Costs, Charges and Expenses,** a maximum aggregate of $4,000,000 and Retention of $25,000. The Complaint satisfies the definition of an **Employment Practice Claim.**

Insuring Clause A of the EPL Coverage Section provides that the **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period**, for an **Employment Practices Wrongful Act** taking place prior to the end of the **Policy Period**.

We recognize that the allegations in this matter are unsubstantiated contentions at this time. Nothing in this letter is intended to suggest or imply that these allegations have any legal or factual merit. Nevertheless, we must reserve our right to decline coverage should any of the Exclusions set forth in Section C of the EPL Coverage Section, the Endorsements to the Policy, or any other provision of the Policy prove to be applicable.

First, we note that **Section B** of the Employment Practices Coverage Section of the Policy contains the following relevant definitions:

10. **Loss** means the damages, judgments, settlements, front and back pay, pre-judgment or post judgment interests awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**. **Loss** does not include:

    a. taxes, fines or penalties;

    b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

    c. punitive or exemplary damages, liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act or the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law, or the multiple portion of any multiplied damage award, except to the extent that such punitive, exemplary, or liquidated damages or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds, Insurer,** this **Policy** or the **Claim** giving rise to such damages.

James Raftice
September 1, 2011

    d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

    e. amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    f. disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing benefit payments.

    g. the costs to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any disabled person;

    h. the cost of creating or reinstating employment;

    i. any amount owed as wages to any **Employee**, other than front pay or back pay; or

    j. any amount for which the **Insured** is not financially liable or legally obligated to pay.

**To the extent that the Claimant seeks payment based on the foregoing Policy limitations, Scottsdale reserves all of its rights, including the right to deny coverage for any amounts that do not constitute Loss, pursuant to Section B-10.**

**Section G.**, as amended by **Endorsement No. 9**, states that if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance. Please make sure that any and all other appropriate insurers be placed on notice of this matter and provide us with copies of your notice letters, the applicable insurance policies and the insurers' responses with regard to coverage.

**Section O.1, Allocation,** of the GTC Section, as amended by **Endorsement No. 1**, provides in pertinent part, that if the **Claim** includes both covered and uncovered matters the Policy shall pay one hundred percent (100%) of **Costs, Charges and Expenses** and there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

**Section F grants the Insurer the duty to defend this Claim. As you know, the Insurer has assigned the firm of Louison, Costello, Condon & Pfaff to provide a defense in this matter. Please note again that the Policy contains a Retention of $25,000. The law firm will therefore bill PowerPay, directly until the Retention amount has been met.**

Section F. 2 provides that the **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the **Insurer's** written consent. Consequently, the **Insurer** will not be liable for any **Costs, Charges and Expenses,** assumed obligation or admission to which it has not consented. Therefore, any costs incurred prior to notice to the

James Raftice
September 1, 2011

**Insurer** of this matter are not covered under the Policy, and shall not be calculated towards satisfaction of the Retention.

The **Insurer**'s position with respect to this matter is based upon the information provided to date, and is subject to further evaluation as additional information becomes available. The **Insurer** reserves its right to assert additional terms and provisions under the Policy and at law, which may become applicable as new information is learned.

Please contact me should you have any questions concerning the coverage under this Policy or other matters in this letter. Be sure to reference Claim No. 1373885.

Cheryl J. Lanier, Esq.
Freedom Specialty Insurance Company
c/o Scottsdale Insurance Company
7 World Trade Center, 33rd Floor
250 Greenwich Street
New York, New York 10007
Direct Dial: (212) 329-6957
Cheryl.Lanier@FreedomSpecialtyIns.com

Very truly yours,
SCOTTSDALE INSURANCE COMPANY

By: *Cheryl J. Lanier*

Cheryl J. Lanier, Esq.
Claims Specialist

/CJL

Cc:   Stacey L. Rich-Abbott, Swett & Crawford
      Via Electronic Mail: Stacey_rich-abbott@swett.com

      Maurice Fitzgerald, Esq., Strazulo & Fitzgerald
      Via Electronic Mail: mfitzgerald@strazlaw.com



EXHIBIT
B

| SCOTTSDALE INSURANCE COMPANY® | | ENDORSEMENT NO. 1 | |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3038198 | 5/9/2011 | PowerPay, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ALLOCATION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

The following Section O., **ALLOCATION**, is added to the General Terms and Conditions Section.

### O. ALLOCATION

1. In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

    a. this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

    b. there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2. In the event the **Insured** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then the **Insured** and the **Insurer** shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

All other terms and conditions of this **Policy** remain unchanged.